The next case this morning is 521-0399 People v. Whitney. Arguing for the dependent appellant is Lauren Bowser. Arguing for the state is Richard London. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Counsel, are you ready to proceed? I am, Your Honor. Counsel for the appellant, please state your name and you may proceed. Good morning, Your Honors, Counsel. Lauren Bowser from the State Appellant Defender Defender's Office on behalf of Charles Whitney. In this case, Charles Whitney was charged with aggravated battery for striking Deputy Justin Gibbs. Whitney raised the affirmative defense of self-defense, which is an admission to having committed the offense, but arguing that he had a reasonable belief that the use of such force was necessary. So here, Whitney's self-defense claim and the question of whether that belief was reasonable hinged on a credibility contest between him and Gibbs about their prior interactions and about whether Gibbs had previously threatened Whitney with physical harm. However, in this case, there were two errors that worked in tandem to deny Whitney a fair trial on that self-defense claim. First, the state introduced prior bad acts evidence that Whitney had previously had two fights in the jail. However, that evidence was not probative of any disputed issue in the case. Second, the state repeatedly elicited good character evidence about Deputy Gibbs and his reputation for having a good rapport with the inmates in the jail. Both of these were violations of Evidence Rule 404, and these errors both individually and cumulatively prejudiced Whitney. In this case that ultimately hinged on a credibility contest between the two, there's a reasonable likelihood that these errors tipped the scales against Whitney and denied him a fair trial. He therefore respectfully requests that this court reverse his conviction and remand Kearney trial. Turning to the admission of evidence of the fights in the jail, a trial the state set forth many reasons why argued for many reasons for the admissibility, but on appeal it argues only two, that this was relevant to Whitney's intent and lack of mistake, and that it was necessary to show why so many officers responded to a call for assistance in the jail that day. However, neither of those things were contested issues or probative of anything in the state's case here. Again, Whitney asserted self-defense. As a matter of law, a claim of self-defense presupposes the intentional use of force. By asserting self-defense, Whitney is admitting that he committed the acts, that he intentionally struck Gibbs, and nowhere in his testimony did he claim that he hit Gibbs inadvertently or accidentally. Rather, the disputed issue is whether he honestly believed that he was in danger of physical harm from Gibbs based on their prior interactions and his claim that Gibbs had previously threatened him with violence and was intentionally pressing on an injured rib during this interaction. So, intent and lack of mistake were not truly an issue in this case. The state also argued that it was and the fact that Whitney was in a lockdown unit because of these trial jail fights to show why multiple officers responded to Deputy Bachman's call for assistance on that date because Whitney was willing to be violent. However, that claim is rebutted by the record. Two of the state's own witnesses testified that multiple officers responding had nothing to do with the fact that Whitney was in a lockdown unit. Deputy Bachman testified that whenever an officer asks for assistance, other officers try to respond as soon as possible. Gibbs himself also testified that normally whenever an officer states on the radio that they need assistance because an inmate is not complying with a verbal order, all available officers would respond. So, evidence of the jail fights have no real probative value in the state's case. For that reason, the jail fight should also have been excluded under the balancing test as more prejudicial and probative. The probative value was virtually nonexistent when the state's own witnesses contradicted the state's purported reason for needing to introduce this evidence. It obviously fights that Whitney was, evidence that Whitney was involved in fights in the jail is highly prejudicial in a case where he's charged with fighting and assaulting an officer in the jail. These courts have recognized that prejudicial evidence, even if it bears some relevance, should be excluded if the state can establish the facts at issue without the challenged evidence. And here the record shows that they could. Several officers testified that it was their policy for multiple officers to respond, regardless of whether this was a lockdown unit. So, the state did not need to put in the fact that Whitney had been in fights or that he was in a lockdown unit to explain why many officers would respond when an inmate's has argued it was necessary to introduce this evidence actually applying this case. It was prejudicial for the state to introduce through several witnesses, at least three of the deputies testified, oh, he's in a lockdown unit for violations. And the state was allowed to ask Whitney about these fights. Also point out that the likelihood of misuse of this evidence by the jury was high based on how they were instructed to use it. Here the jury was told they could consider this evidence for intent, motive, and design. The state's obviously abandoned this argument that motive and design were at issue in this case, and they were not at issue in this case. So, as this court stated in Peeble v. Lenly, we presume that jurors take direction from limiting instructions on other crimes evidence. And when they consider it only in a manner they are told to consider it. So here, so instructions on use of other crimes evidence need to be accurate. It can't just be a throw everything at the wall and hope something sticks kind of approach. If jurors are not properly instructed, they have no way to use the evidence in an appropriately limited manner. So that's what we have here, where the jury is repeatedly told about these jail fights, and then told by the jury instructions that, hey, this stuff is important for at least three separate reasons, when in fact none of those are relevant in this case or admissible. It was not admissible purpose in this case. So the likelihood that the jury misused this other crimes evidence and considered it as evidence of Whitney's propensity for violence, rather than for many proper purpose is high under the facts of this case. In addition, the state also elicited repeatedly good character evidence about Deputy Gibbs and his good rapport with the inmates in the jail. This is also character evidence that was not admissible pursuant to any of the exceptions in Rule 404. Specifically during the state's case, three of the deputies involved offered testimony about him having a good rapport with the inmates that he could usually get inmates to comply because of his good rapport with inmates. Williamson stated that it would be common for him to inject himself in a conflict like this one, if he had a good relationship with the inmates. Sergeant Weiss testified that he just has that type of rapport with the inmates to get them to do what they're asking in a peaceful manner, so it doesn't escalate. Gibbs himself testified that, you know, he thought he could get them to comply due to his relationship with all the inmates and all the times they would comply with his orders. So the record shows that this evidence was repeatedly elicited for the improper purpose of bolstering Gibbs' version of events and suggesting that he was merely acting in conformity with his good character during his interactions with Whitney. And that is how the prosecutor used it in her rebuttal closing argument, to immediately point out that this good relationship that Gibbs had with every inmate in the jail and to bolster him and his suggestion that he wouldn't have engaged in this prior instance with Whitney outside of the other officer's experience between the two men. Finally, this court should also consider just the cumulative effect of these errors. Again, this is a self-defense claim that boils down largely to whether the jury believes Whitney or Gibbs about whether there was these prior threats, whether he had previously threatened to put inmates in Whitney's cell that would whoop him, whether he knew about injured ribs and was intentionally pressing on Whitney's injured ribs during this incident. And both of these errors worked in tandem to bolster Gibbs' credibility and to dirty up Whitney and suggest really nothing else than that he had a propensity for violence or for fighting. And because of how the jury was told to use this evidence in this case, there's a reasonable likelihood that they misused the evidence and that this scales against Whitney. Accordingly, this court should find that these errors individually and cumulatively denied him a fair trial. And he respectfully requested that this court reverse his conviction and remand for a new trial. Unless your honors have any other questions, I will save my time for rebuttal. Justice has gone and welch any questions? No questions. No other questions. Thank you. Good morning, your honors. Counsel, may it please the court. My name is Richard London on behalf of the people of the state of Illinois. Your honors, the gist of defendant's argument appears to be that the evidence was closely balanced based solely on a self-serving testimony of alleged earlier instance where Deputy Gibbs purportedly verbally threatened to put another inmate in his cell who could whoop him. Defendant claims that he perceived that this was a direct threat. Defendant glosses over the overwhelming evidence of guilt, also glosses over the concept of whether or not the people successfully rebutted his claim of self-defense. He wants to focus on this alleged credibility determination. However, it really was not a credibility determination solely between himself and Officer Gibbs. Indeed, there was overwhelming evidence of multiple officers, two nurses, a jail administrator, all testifying that the actions of that day would occur. The issue really is whether or not, even assuming this prior incident occurred, which the people do not concede, but even if this prior incident did occur, does that justify a self-defense claim? The people established and argued and went through each element of self-defense and said that even if that prior incident did occur, at most, defendant has a self-serving and subjective reason to dispute the fact that each and every element other than possibly defendant's subjective belief that he needed to protect himself was rebutted by the people. More importantly, defendant also does not in any way analyze the evidence that was introduced of the prior crimes. The prior crime evidence here was introduced by two very non-intrusive, very minimal questions, which the people highlighted in their brief, which was asked of the officer who called for assistance. Why did you feel the need to call for assistance? He said, based on the history. Were you aware that he had a couple of instances where he was alleged that he initiated a fight? The answer was yes. There is no way that that could have been harmful or that the prejudice outweighed the probative value. The people analyzed in their brief cases where extensively more damning evidence was introduced and where the court said any error was harmless based on the evidence of guilt. And what is the standard of review for the admission of that evidence? It's whether or not the trial judge's determination was against the manifest weight of the evidence, number one. And number two, this court can affirm on any basis. So even if the finding of the judge was for a different purpose, this court can accept the suggestion that the people are now making that it was for intent, lack of mistake, etc. And based on that, defendant has argued that, well, wait a second, we don't, the people didn't need to show intent or accident or absence of mistake because by just raising a self-defense claim, defendant acknowledged that he did what he was charged with doing. That's quite misleading. It's misleading in the fact that defendant's testimony at trial was that he merely swept away the deputy's hand without the testimony of the other deputies, without the evidence of the video itself. If you followed defendant's testimony, you would have thought that simply all he did was brush the deputy Gibbs's hand aside. That is not what happened here. He alleges that due to his fear of what deputy Gibbs might do and do it to his pain, that he had to respond the way he did. That's not what he testified to. So the people were absolutely not only able to, they were required to establish what occurred. The evidence of other crimes was minimal at best. Relating to the concept of the character evidence, again, combined with both the self-defense claim, but more importantly, the claim that deputy Gibbs lacked the authority to do what he did and understand that below, that was the main argument. Defense counsel kept harping on the argument or the fact that deputy Gibbs allegedly brushed by or pushed aside other deputies in order to approach defendant. One, not only is that contrary to the testimony of all of the other witnesses, not only do each of the witnesses say that this was standard, this was authorized, this was common, that there was not any excessive force, that at most he placed a gentle hand guiding defender, attempting to guide defendant back in a cell. The fact is that the jury could not only judge the credibility of all of the witnesses, but the jury also was able to see the actual encounter. Defendant argues for the first time in oral argument that Gibbs allegedly, and defendants argued twice or stated twice, that deputy Gibbs was intentionally pressing on defendant's chest. That was not ever brought out of trial, was not argued below. The argument was that suppose the pressure caused defendant pain, which is belied by the record, but there was never any argument that Gibbs did that intentionally. So that is something that people did not respond to in their brief. Most importantly, the fact is that the people went through a lengthy analysis of all of the evidence, established the credibility or lack thereof, and showed why almost every fact that defendant testified to was rebutted by the record, both as to whether defendant had ever suggested he wanted to make a phone call, whether defendant was in pain or would have been in pain months after his prior injury. That's rebutted not only by the officers, but by the nurses who testified that defendant did not ask for pain medication or sought treatment more than two weeks after he was injured, so did not seek treatment for approximately two months prior to this incident. And given the fact that the people rebutted each of the evidence was harmful, indeed, given the nature of the evidence, it was well established that the introduction of this evidence, even if in error, was harmless beyond reasonable doubt. What were the injuries to Mr. Gibbs? Gibbs, the punch in the nose, basically shattered his nose, jaw bones, his orbital bones. So his nose was not only broken, but the nurse described that it was like pushed flat. So the bones were badly damaged. His, again, eye was damaged, it was injured, his jaw was injured. And as of the trial, he testified that he was still seeking, it took him about a month to return to work, and he was still in need of further treatment as a result of this incident. So it was not a sweeping aside of his hand, it was a vicious punch to his face, totally unwarranted. Again, even if defendant had a subjective belief, which the people, you know, argued in their brief much more extensively, even the subjective belief was unwarranted. But even if that belief was subjectively accurate, it did not justify the actions that he took. I see my time is up. So I will rely on the argument that we had in our conflict, and ask that this court affirm both the conviction and sentence. Any questions from Justices Welch or Bowen? No, no question. No questions. Thank you, Your Honor. Rebuttal? Yes, Your Honors. First, the state, you know, makes a lot of argument about how it needed to sweeping a hand away, and that that was not as significant as the punch here. But there's two things. He called it a quick strike. He never denied intentionally striking it. So the fact that there's a difference in degree between a punch or using the word quick strike, that doesn't actually put his intent at issue. We're not challenging the severity of the strike here. The question is whether this evidence of the prior price is necessary to show that he acted intentionally. Was he complaining that Gibbs was hurting him? To anyone at the present time? No, at the time, was he complaining he was being hurt? No, he testified that it happened relatively quickly. And you can see from the video that  And how big is Mr. Whitney? I believe he's 6'2". He is significantly larger than Gibbs. And again, his self-defense claim, he admits that he intentionally struck Gibbs. He's not disputing that at all. He's not at trial or on appeal. This was an intentional act. That's not disputed. So the question for the jury in a self-defense claim, when someone is claiming that their use of force was justified, is was there a reasonable belief? So, you know, the self-serving testimony, but that really just highlights that this was, in fact, just a credibility contest. Was there any damage to the defendant's hand? I don't recall if there was damage. I thought I saw something. Maybe I didn't. I don't recall if there was damage to his hand. But again, no one's disputing that he struck him here and that Gibbs was seriously injured. Again, the issue was just a matter of whether these prior interactions between the two men, whether it was reasonable for Whitney to fear great bodily harm in that moment or fear for physical bodily harm. And that's what the jury had to decide. So the fact that all they had here was Gibbs' testimony about, no, I never did those things. No, I never threatened him. And Whitney's testimony about, yes, he was threatening to put inmates in the cell to beat me, tell me I wasn't so tough. I filed prior grievances about him. I felt like he was treating me different. All of that was relevant to the self-defense claim. And the testimony of Whitney was critical to that question. So adding evidence of these prior fights was likely for the jury to think he has a propensity for violence and make it less likely for the jury to believe here that there was these interactions between the two men that caused him to have a reasonable fear. So it did affect the jury's consideration of an important issue in the case. So again, because the jury instructions wrongly told them they could consider it for intent, motive, design, that was not an issue here. And because the record shows that the state didn't need to bring out the fact that he was in a lockdown unit to explain that many officers responded on this day. So really it had very little proven value to this case and was highly prejudicial. And as the state pointed out, all we have about these prior incidents is really these two men's testimony. And so that had the effect of bolstering Gibbs and tipping the scales against Whitney in a case where credibility was a critical question for the jury. On the narrow issue of the self-defense claim, no one's really disputing how the punch went down that day. So if your questions, we would ask that this court reverse Whitney's conviction or remand her in trial. Any other questions from the justices? No questions. No questions. Thank you, counsel. The court will take the matter under advisement and issue a decision in due course. This concludes our orals for today.